The next case for argument is 15-2083 IGT v. Aristocrat Technologies. Joe Kamenkau was paid millions of dollars for the work he did at IGT and the inventions he made there. He then decamped to our main competitor, Aristocrat, where he implemented those same inventions on Aristocrat's machines. A sign or estoppel is an equitable remedy that prevents Mr. Kamenkau, an aristocrat, from denying liability on any theory that these patents are invaluable. In order to grant a preliminary injunction, a district court has to determine that there's a reputable harm, there's a potential for a reputable harm. Correct, Your Honor. In the absence of an IPR even having been filed, how can a district court conclude that there's a potential for a reputable harm? I think in multiple ways. The first of which is, of course, the statistics that we referenced that the court can take judicial notice of, the rate at which the PTAB cancels. But let's look first at— Well, the PTAB doesn't have authority to cancel IPRs that haven't been filed, right? And that's the circumstance the district court was looking at in this case. So let's leave the statistics on cancellation out because we're not even talking about an IPR that's been instituted or filed. At the time we moved, you're correct, the petitions had not been filed. They have now been filed. At the time we moved— So we're reviewing a district court decision on a preliminary injunction that was based on the circumstances that were before her, right? That's correct, Your Honor. However, our plea for injunctive relief is not just for a ban on aristocrat filing petitions and then once they're filed, we give up. Our plea for injunctive relief is a plea for them to be enjoined from prosecuting those petitions once filed. At the time that we moved for our preliminary injunction, yes, the petitions had not been filed. The district court was going to file them and by that in itself said that they were going to represent to the PTAB that there was a reasonable likelihood the claims would be canceled. They've since done so in their petitions. We can take advantage of that statement by aristocrat to satisfy our burden of irreparable harm for a preliminary injunction. What more need we to do than point to what our opponents say in order to take advantage of the equitable relief of an anti-suit injunction? But as the Chief Judge says, you've put several points here, the filing, the institution, and then the rejection of claims. None of them had occurred as of the time we must decide this case. That's true. But right now, the filings have occurred. And you don't lose the opportunity to raise this issue that can be raised later if there is institution. That's absolutely. You have a chance to respond on that issue. That's correct, Judge Lurie. And we will. However, I'll point out a couple things. First, had we waited to move for a preliminary injunction until institution, my opponent would be here or would be in front of the district court arguing that our delay by itself required denial of our motion for a preliminary injunction. When you're a trailblazer, as we concede we are, it's better to blaze as many trails as possible to see if any of them turn out to be wrong or a dead end. And that's what we're doing. The matter of strategy was good that you raised the issue, but that doesn't control what we decide. No, it does not. But the district court also denied our plea for injunctive relief on A7 because the district court said it could find no precedent granting this type of injunction. Not very surprising given that IPR is relatively new in its ubiquity, even if the inner part is reexamined in the past. But it's an abuse of discretion to deny a request for injunctive relief because no one's ever gotten it before, unless 100 people have asked for it and not gotten it, in which case that's persuasive authority. Virtually no one has asked for this. Is it an abuse of discretion to deny a grant of a preliminary injunction where the IPR has not even been instituted yet? Yes, in this case we're arguing it is because, I'd say for two reasons. Number one, as time goes on, given the limited amount of time for the PTAB to decide the favor, as time is limited to resolve a signer estoppel before that proceeding in the PTAB concludes, this court may decide as a matter of discretion for the district court or for itself that 12 months is enough time to get a signer estoppel resolved. But sitting at ex ante, that's not at all clear. And if this court decides that a signer estoppel needs more time to be resolved and aristocrat to have its rights of appeals, the right time to move is when we did. I can fully understand. I'm not clear on what you're thinking. Let's assume they institute an IPR, and you're assuming that the board will try to resolve the issue of a signer estoppel? Is that what you're talking about? No, not at all. Our preliminary injunction is premised on the board's refusal to consider the defense of a signer estoppel in IPRs. My point is that if we move for a preliminary injunction in the middle of May when the first one of these may institute, that gives the district court approximately 12 months to merits with the preliminary injunction hearing under Rule 65, 12 months to resolve that, and then come here on an expedited appeal for aristocrat to preserve its rights to appeal on that decision before the injunction could fully issue and be confirmed by this court. That's not that much time. I appreciate it. There's some confusion in terms of how this would all work out, even if the board decided to recognize a signer estoppel. Can I just ask you, we haven't had very many cases involving a signer estoppel. I'm not sure why that is. It could be because this is a matter that can be taken of Kira very easily contractually when somebody assigns their patent to someone, right? But be that as it may, it seems to me that I don't know how complicated the privity questions are in this particular case. I don't know how many claims are at issue and whether the assertion is that this inventor's respect to all of the infringing products or just some of the infringing products and some of the claims. Has that been sorted out yet? Not at all. The district court only... Okay, well, with the district court, I mean, in order to get a preliminary injunction, you would have to go a lot farther, right? You would have to establish, one, that there was privity, and two, that the products that are... I'm not even sure how it would work because we're dealing with products that are being challenged in different claims. I don't know if some of the claims were at stake or others, right? So there's a whole lot of work, even if we were to agree that there's some remedy here to be sought in connection with the preliminary injunction. There's a whole lot of work to be done, right? That's absolutely correct. That's why we moved when we did. That's why we moved for expedition of this appeal. That's why we're... So you can't possibly be asking us to enter a preliminary injunction in this case, right? No, Your Honor. What we are asking for is vacater of the denial and a remand with instructions to entertain our motion for a preliminary injunction. And this court can, of course, take into account the changed circumstances that Aristocrat has now filed its petitions. And the injunctive relief we're now seeking is an injunction against them prosecuting these petitions, an anti-suit injunction. Let's go back one step. You file this action. The district court says, what's all the fuss about? There's no case or controversy. This doesn't meet the requirements of a declaratory action. And you say, well, they're making noise. As I observe, there was no record evidence of a threat, a specific threat to, let's say, to attack the patent in another form, that is, to go through the IPR. So it's not hard to see why this trial court felt that whatever you were asking for was premature now that they have proceeded with the IPR. And I assume your theory, without knowing how it would work out in practice, is that estoppel is not an available defense in the PTAB. And therefore, unless you're in the district court, you will, is the theory then that you would be barred, you would be precluded from raising the question of estoppel? There's a lot to unpack in what you said. Firstly, Aristocrat did indicate to us they intended to pursue IPR in our negotiations over the original extension to their time to answer. And that's why we entered into an IPR moratorium for a few months. Then, in response to our motion for preliminary injunction, they told the court they were going to seek IPR. So at that point, it wasn't speculative. But then, getting to, I think, the more interesting part of your question, the problem that we face is that this court hasn't yet decided what effect a cancellation certificate has on a party in our position, the patentee, against an assigner, where the doctrine of assigner estoppel should ordinarily apply. If the court holds, as Aristocrat is arguing right now here and in the district court, that a cancellation certificate absolutely nullifies our ability to stop Aristocrat from arguing invalidity in the district court, then the only remedy we have is to somehow get an injunction before that cancellation certificate. That's why we did what we did, and that's why we're doing what we're doing. But to answer your question directly, yes, if IPR is instituted, we will move for another preliminary injunction. And yes, the district court can consider our arguments. To be very clear on the record, it is a premise of our preliminary injunction motion that the PTAB will not hear assigner estoppel.  That the PTAB should reconsider that and should accept assigner estoppel. Because we have to cover all our bases. The PTAB has a statutory provision to interpret, right? Any party may file. And assigner estoppel is an equitable principle. Correct. That is an equitable principle in a statutory enactment. How do they weigh in the balance? Well, the PTAB has a statute. The PTAB can decide, maybe given Chevron deference, may have Chevron deference to decide what it can and cannot hear in the course of an IPR. But to answer your question directly, I'm not sure if the PTAB is being terribly consistent about this. They talk about invoking judicial estoppel in their opinions. But there is no statute that gives them the ability to invoke the doctrine of judicial estoppel. The legislation is as against the backdrop of the common law. And if and when this issue ever comes here from the PTAB, the argument will be made that a statute that is utterly silent on equitable defenses, says a person may file, does not answer the question of whether equitable defenses are available. However, I want to note for you, Judge Lurie, that question may never get here because of the second question presented in Quozo and the idea that assigner estoppel may be an institution-level decision. If the PTAB, if this court's precedents are maintained in Quozo question two, and the PTAB decides assigner estoppel is an institution-level decision, this court will never get to decide, except maybe in a case like this one, that the PTAB has to hear assigner estoppel. I will note, this court could affirm the denial of the preliminary injunction and come to its own conclusion that the PTAB has to hear assigner estoppel. And that's why we don't get a preliminary injunction. That'd be a little extreme. That's what I was about to say. I'd like to ask your honors to consider a hypothetical to address aristocrat's argument about section 311. According to aristocrats, section 311 is not a generic grant of authority to file an IPR. It's an absolute immunity from any restraint that any court could ever impose on a party to file that IPR. And that just does not make sense when one considers the possible contract that your honor alluded to. I don't think contracts with an assigner to not challenge his own patents are terribly common, because assigner estoppel's been around for over 100 years and people know that assigner estoppel applies. But I presume aristocrat did contract with us never to seek IPR. It's aristocrat's position that we could not go into a state court in Clark County and get an anti-suit injunction against the very IPR that aristocrat had contracted not to seek if aristocrat indicated it was going to seek one, or in fact did. That's what aristocrat thinks 311 means. That it means not just a person may file, but all people may file under all circumstances despite what a court in equity may say. And one thing we know is Congress did not intend to deprive federal and state courts of the authority to issue anti-suit injunctions. We know what that looks like. It looks like the Anti-Injunction Act. Congress speaks with specificity. And the PTAB doesn't have any Chevron deference. I think my opponent will agree. No Chevron deference to decide whether a federal district court or a state court has the power in equity to restrain someone from appearing in front of the PTAB and to issue such an anti-suit injunction.  this contract hypothetical is not just fantasy. The PTAB refuses to hear contract bars to seeking inter partes review for the exact same reason it refuses to hear a sign or estoppel as an interpretation. How would the PTAB be able to hear cases on the sign or estoppel? Because as we said, we started with this conversation about the factual inquiries that have to precede a conclusion that a sign or estoppel would apply. It requires that you know something about the relationship of the parties in privity, and you have to determine, you have to know something about what products are being alleged or have been alleged to be infringed and so forth. How would the PTAB even have the capacity to do that sort of inquiry as a threshold matter? I think they'd have to create rules to give themselves the capacity. They're good at real party and interest and they allow real party and interest discovery, which is somewhat similar to privity. And as to the accused products, I think you've identified exactly the difficulty that we identify in a footnote in our brief, acknowledging some of the weaknesses in the argument that the PTAB should have to hear a sign or estoppel. But every one of those leads you to only two conclusions. Either we should be able to get an anti-suit injunction at the appropriate time, and this court can tell lower courts what the appropriate time is. Either we should be able to get the anti-suit injunction or Judge Cabranes in American Fence is correct. And it simply doesn't matter what the result of the IPR is. Aristocrat cannot interpose a cancellation of the patent as a defense in our suit for patent infringement. Those are the only two options. Did I hear you correctly? Did you say that you have now, after they've proceeded in the patent office, that you have renewed this case or filed another action or gone back to the same district court or what? There has not been institution yet. I want to make something clear for you, Judge Newman. There is an underlying patent infringement suit here that invokes the district court's subject matter jurisdiction. We've sued for patent infringement, and in connection with that, sought our anti-suit injunction. This is not a freestanding claim for an anti-suit injunction. And are there defenses raised in the district court proceeding with regard to invalidity? Yes, Your Honor. We have, all the way through, invalidity contentions on every basis you could imagine against the subject patents. So, but to get to your question, Judge Newman. Has anyone asked for a stay, just to kind of. Aristocrat has now asked for a stay pending IPR. They've said. The IPR has not been, there's no decision on institution. Correct. Aristocrat has asked for a stay, pending IPR, and we have responded to that by saying, no stay should issue for the same reasons that Judge Cabranes gave in American Fence. May I reserve my remaining time for rebuttal? Yeah, can I just ask you, just, I'll, we'll restore your rebuttal, but let me ask you. If the district court did refuse to stay the case for this or other reasons, it's still a fight to the finish line, right? In terms of the time it would take, because they're under a pretty quick clock in the PTAP proceedings, and the district court proceedings even if not stayed are likely to go longer, right? It's a fight to the finish only in the following sense. If the district court refuses a stay on the grounds that Judge Cabranes in American Fence is correct, it's not really a fight to the finish unless this court subsequently disagrees with Judge Cabranes from American Fence, because it doesn't, simply does not matter. Well, this is a district court opinion that seems to bump up against some of our precedent, right? When you say that, I assume you're talking about Fresenius, and what I'll say is this. Fresenius only says that when a cancellation certificate issues, the patent holder loses the case, and then it says, it makes a reference to mootness. The patent holder loses the case because it no longer has a property right. In this instance, if we were to lose these patents in the IPR, we would still have a property right against aristocrat, an equitable property right, just like you can have an equitable easement, just like you can have a constructive trust. So our case would not be moot. That's what equity would tell us in that circumstance. But if Fresenius is going to actually address an assigner estoppel case that it never discussed, and we're going to take a very broad reading of it, then you're right. We're still in a race, a race to the district judgment or a race to hear it. Thank you. And we'll restore two minutes of rebuttal. This court can affirm the court below based on irreparable harm, and I'll come back and address that issue. But I think we still do not have a situation in which there has been an institution, nor are we any closer, because there is no institution, to a final written decision terminating the claims. But accepting the position that there is a valid argument about assigner estoppel, how can one justify going forward even at the institution phase? In this case, on this appeal, that issue, I don't believe, is fairly raised. As they say in their reply brief on page 8, IGT is not asking this court to decide in this case whether assigner estoppel should be available as a defense in IPR proceedings. Indeed, the absence of assigner estoppel as a recognized offense in IPR proceedings is the basis for IGT's preliminary injunction motion, and the source of its irreparable harm. Would you answer my question? Because they have conceded, for purposes of this appeal, that the aristocrat has the right to file in the PTAB. I don't think they've conceded it. They have said, perhaps, it's not right for adjudication. They are not asking. I haven't seen that they conceded the right to go to the PTAB with a patent that they say is estoppel. But on their road to that, they have conceded that they're not asking this court to decide whether or not assigner estoppel is applicable in a PTAB proceeding. No, because they're trying to justify their taking an interlocutory appeal on the denial of a preliminary injunction. So they have no choice but to concede the premises. Whether they had no choice or not, they've conceded the premise. Now we ask the question, if the aristocrat is within the zone of anyone other than the patent owner, two questions and two problems arise. One is, how do they get around Nagata? What is the affirmative basis for now enjoining aristocrat from participating in a statutorily separate proceeding in the patent office from district court litigation? And to go to the question that Judge Lurie raised earlier, how do they get around INS versus Pangillaland, which said where the statute is clear and the parties acknowledge that the statute is clear, a court cannot, in the guise of fashioning an equitable remedy,  The statute doesn't come even close to discussing a matter of estoppel. And that's because a sign of estoppel is a defense to a claim of invalidity in district court litigation. So are you saying that we have to, in this case, in order to find in your favor, we have to decide the question of whether or not a sign of estoppel should apply in PTAP proceedings? I don't believe you have to decide that, because they've specifically said it's not an issue they're asking you to decide. So we take the case as they have now styled it. But that doesn't mean, I'll leave that aside, because I don't think there's any waiver here or anything. I mean, that statement makes perfect sense to me in terms of what our role is in connection with the preliminary injunction versus other issues. To me, it doesn't indicate that they. Let me ask you just, in terms of just looking at the PTAP proceeding, let's assume hypothetically that your friend's suggestion may turn out to be true, which is what, depending on what the Supreme Court says or otherwise, that not only does PTAP consistently continue to take the position that a sign of estoppel doesn't apply, but also that that decision is not even reviewable by this court. Is it your view that that's the absolute end of it, and there's no way that either we or the district courts can speak our own view of the issue through the preliminary injunction process or otherwise cases coming through the district courts? This preliminary injunction would not be the appropriate way to resolve that if the Supreme Court were to say it's not reviewable. And I don't think there's any inequity in that, because the assigner estoppel doctrine was created for district court litigation. Hypothetically, suppose in this case, the same action was filed, and Aristocrat did not raise any invalidity defenses. There would be no premise for a sign of estoppel. And therefore, what would be the basis for enjoining the PTAP? The fact that we've raised invalidity defenses doesn't mean that the filing of the PTAP eviscerates the assigner estoppel doctrine. It will still apply in the district court case if, for example, there's a- Well, that's what your friend is saying. It will still apply in the district court. But if the PTAP invalidates the patent, unless we buy, I guess, some of the suggestions by Judge Cabranas in the district court case, then that's the end of it. And the patent is invalid, case over. That's right. And I think this court's reasoning for Xenius is applicable here.  of whether there is a patent on which to predicate a suit under 281, 35 U.S.C. 281. As for Xenius makes, I think, reasonably clear, the basis on which a suit exists no longer exists if the patent office doesn't declare the patent invalid. It says it never should have issued in the first place. And there is no property right left to enforce. And that shouldn't make a difference whether it's a party in that situation which was not subject to a sign of estoppel or- Do you understand the tension here, right? I mean, the district court, the PTAP proceeding was entitled, at least to a certain extent, to be an alternative to the district court proceeding. No one is disputing that if the facts line up for your friend's side, i.e. there's privity and some of the infringed products are those that tap into what the inventor invented, then a sign of estoppel will apply in the district court. And that would be a pretty powerful tool they would have. They could not challenge, you could not challenge the validity of the patents. But now that's all lost if you decide to go the PTAP route, in your view, right? That's right. And I believe, not in my view, I think it is in Congress's view when they passed the PTAP, they wanted an alternative to litigation that was speedy, effective, and would get rid of what Congress at the time believed, as they believed, as this court explained in Fresenius and earlier, that the patent office is issuing bad patents. But there's no suggestion in the legislative history or otherwise that Congress had some problem with the application of the assigner's estoppel doctrine at the district courts. And it was trying to foreclose that or to run around that by PTAP proceedings, right? No, but the assigner's estoppel doctrine, all the cases arose in district court litigation. It was an equitable defense in district court litigation. Well, of course. Where else was there? There wasn't. And that's why those cases are inapposite to this case, because they didn't have to consider the conflict between Congress establishing a separate administrative review for the actual issuance of the patent, as opposed to once a patent is issued, doing district court litigation. As this court in In re etter, when it was deciding whether or not the presumption of validity applied in reexamination said, fundamentally, the two administrative proceedings in district court litigation are separate. They're different. They achieve different things. In one, you're challenging the validity of the patent. In the other, it is an administrative re-review by the patent office to see whether or not the patent should have issued in the first place. Can I ask you something? If there were an instance where an inventor leaves the company and they assign their patent, and there's a clear, unambiguous contractual provision that says that I will not challenge the patent at any time, and then let's assume there's serious privity in this case, and then, in fact, they're one and the same, is it your view that PTAB should not recognize or does not have the authority or the ability to recognize that contractual bar in any way, shape, or form when it's reviewing validity? That the inventor could come in and challenge the validity, notwithstanding the contractual provision? Based on what I am aware of, I don't believe that there would be a basis to engraft on the language anyone other than the patent owner a decision that says a sign or estoppel applies. As they can see. I'm not talking about a sign or estoppel. I'm talking about a contract provision that says I'm selling you my invention for $2 million, and I am agreeing that I am never going to assert that the patent is invalid. We have a strict contractual provision under state law. And then I run over to the patent office to try to invalidate the patent. Is the PTAB going to recognize that? Are they allowed to? I don't know whether the PTAB would recognize that or not, because that's not the issue in this case. We're talking about an equitable doctrine that is created and is specifically applicable and will be applicable. That's an or estoppel. It's a very powerful, equitable doctrine. You can't sell something to someone and then deny its value. That's quite basic. And you're, in effect, saying that any person can file an IPR that wipes that out. That's what Congress said. Anyone other than the owner of the patent. It's not me saying it. It's not the district court saying it. It's Congress saying it. Of course, Congress didn't say including yes and or estoppel. Because it didn't have to. Because a sign or estoppel, once ex-party re-examinations and inter-parties re-examinations, they had never addressed the issue of the applicability of a sign or estoppel, the Supreme Court, in that proceeding. And I do believe that if the court were to look at it today, there are serious questions as to the vitality and the breadth of what a sign or estoppel is. And I'll give you one example, the written description argument. The basis of a sign or estoppel is the inventor says, here's my invention. And I can't challenge that if I then leave and do certain things. Suppose after he leaves, the claims are drafted way beyond any, concededly, anything that specification would support. Well, the inventor never really assigned that invention, because it's not something he was in possession of. But a sign or estoppel bars that written description argument. That doesn't seem to me to be fair, but that's the breadth. And that's why I think if the Supreme Court were to Is that a hypothetical case, or is that a real case? That's a hypothetical case. But I don't know whether it's It sounds very hypothetical. Well, there are written description problems in patent litigation all the time, and many of which this court has affirmed the written description is not being one in which the inventor was in possession of the invention. But you won't even get to those issues. That's why you haven't had those cases. You won't get to those issues in a sign or estoppel, given the breadth of it. And it cuts against, as this court recognized in Diamond Scientific, what the Supreme Court said in the Lear case. There's a problem with bad patents. Yeah, but even playing with your hypothetical, a written description isn't something you can get review of the PTAB. So in terms of written description cases, if that's the validity challenge in the district court, you're going to have to live with it. What you're arguing here isn't going to fix that up for you. No, but I was just addressing the issue of whether or not the sign or estoppel is the be all and end all that my opponent seems to think it is. But the sign or estoppel doctrine exists, but it was created and exists in district court litigation. In this court, in Fresenius, in Ray Etter, and Congress, when it set up ex-party re-examinations, re-issues, inter-parties re-examinations, and the IPRs, has said, and district court cases in the inter-parties re-examination context have said that it means what it says. So Congress didn't, when it passed the AIA and set up IPRs, if we're going to look at it, it wasn't writing on a blank slate. It was writing in the context of district court cases, which had said, in inter-parties re-examinations, the sign or estoppel does not apply. So I don't think there's anything inconsistent or radical in what Congress did when it did. What do you want us to do here? I mean, there are ways even to achieve your result. I mean, one of your arguments, obviously, this case was not right, that there was no IPR filed. That's one way to go in order to achieve your result, which is to affirm the dismissal. But we've spent about 15 minutes now arguing about a much broader conclusion that you're advocating. I'm not advocating that the court needs to reach those. What my point is, is that given those concessions, there is no basis for an injunction here. What is the affirmative claim, to use Nogada's language, what is the affirmative basis for now taking an equitable doctrine created for district court litigation, which still has vitality in this case? It would apply if there's no institution, or if there's institution and the claims aren't canceled. Not only then to prior art, we'll get the estoppel here, but non-printed publication prior art would still fall within the umbrage of an assigner estoppel in the district court litigation. So there is still some vitality to the assigner estoppel. It didn't ban assigner estoppel. If somebody doesn't file an IPR, assigner estoppel would still apply in district court. What we're talking about here is given the concession that they're not asking you to consider whether assigner estoppel should apply in the PTAB, the district court's decision was correct. And it should affirm. Just to note one point about the argument that maybe you should remand with instructions to consider this within a year or whatever period of time. There's 32 patents in this case. And while it's not in the record, we have now had a case management conference in which aristocrat has picked five patents to go forward, and we've picked four, one of which is a Cam and Cow patent. But to do what they want you to do would have to remand and tell this court to deal with all four of the Cam and Cow patents within a year, because they're all different inventions. They all go to different things. And it is hypothetically possible if they were to prevail on one of the patents, they would lose on the others. Because the Cam and Cow wasn't involved with the inclusion of those particular features in the finished device. So I think the court goes down a dangerous path if it's going to take assigner estoppel cases where there's IPRs and begin to now mandate what the district court has to do and in what period of time it has to do it. OK, thank you. I want to just take a minute and talk about this concession that you've made. Yes, Your Honor. Did you make a concession? No, Your Honor. We acknowledge only merely what Your Honor said when I proposed that this court could affirm on the basis that the PTAB has to hear these things, and you said that would be a little bit too far.  and even is arguably outside of the scope of the appeal in the sense that we could argue for affirmance on an alternative basis, but if we came into the court with a brief that said, we lost below, but we'd really like you to affirm, I think I would have gotten a letter suggesting that maybe there was no appellate jurisdiction in the case. So no, it's a concession only in the sense that it forms the basis for our request for relief. I want to start with, what should the court do? I think we'd ask the court to do a little bit more than just affirm on the basis that we're the trailblazer, we tried everything, and we came in too early, and really, in the future, people should wait for institution, because the district court expressed at A7 that it was going to deny the motion, at least in part, because no one had ever asked for this relief before. And in that sense, the district courts do need guidance as to whether these anti-suit injunctions are available. Now I'd like to move to your hypothetical about a contract. You asked a question, my friend, which was, will the PTAB consider the contract bar that you proposed in your hypothetical? There is an answer to that question. The answer is no. It's ASCELT versus DYMO, IPR 2015-00781 at page 7, where the PTAB said, for the exact same reasons that we refuse to consider a signer estoppel, we will not consider any alleged contract bar to seeking IPR. And that reason is because the statutory language is so broad, allowing any person to file? That reason is, again, exactly section 311. In that case, it's a form selection clause. So the argument was the form selection clause prohibited the petitioner from seeking IPR. I want to now go to NGADA, because my opponent brought up NGADA. NGADA has hold absolutely nothing about the availability of an anti-suit injunction in an infringement case. It's a subject matter jurisdiction case where the only federal claim was, in the discussion you and I were having, Judge Newman, the only federal claim in NGADA was one for a declaratory judgment of a signer estoppel. And the court held at page 370, as the district court fittingly noted, it makes no sense to use a doctrine intended to stop a party from advancing a particular claim or defense in a legal case as a way to sue a non-party who has made no claim or defense in a legal case. We sued aristocrat for patent infringement. That is our cause of action. That is what gives the district court the authority to enter the anti-suit injunction we're seeking. And the fact that a signer estoppel is a defense to claims of invalidity is of absolutely no moment. Think about res judicata. Res judicata is a defense. There is no cause of action for res judicata. But when I want an anti-suit injunction on the basis of res judicata, I go back to the first court that entered that judgment and ask that first court to enjoin proceedings in the second tribunal. You don't need a cause of action specific to the defense you're asserting to seek an anti-suit injunction. Now to address the scope. Your time is up, so you can have one more. Sorry, Your Honor. One more point. The scope of a signer estoppel, it's only ever been in the district courts, as Judge Newman said. That's because that's the only place to assert it. And it assumes the conclusion to say that because Congress passed section 311, a signer estoppel doesn't apply outside the courthouse walls. Courts are courts of equity. A signer estoppel does apply everywhere. Thank you. Thank you. We thank both parties in the case suspended.